UNITED STATES of America, Plaintiff–Appellee,

v.

Khalil MUHAMMAD, a/k/a Jerry Jackson, Defendant–Appellant.

No. 90–1242.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 25, 1990.

Decided April 4, 1991.

R. Jeffrey Wagner, Asst. U.S. Atty., Rodney Cubbie, Milwaukee, Wis., for plaintiff-appellee.

Marc L. Polland, Milwaukee, Wis., for defendant-appellant.

Before CUDAHY and FLAUM, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

Defendant–Appellant, Khalil Muhammad, was convicted following a jury trial of conspiracy to possess with intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and one count of possession of ammunition by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Muhammad was acquitted on one count of using or carrying a firearm during and in relation to a drug-trafficking crime. The district court sentenced Muhammad under the Guidelines to two concurrent 324–month sentences. Following the imposition of sentence, Muhammad filed this appeal challenging his conviction.

## I.

On the morning of January 25, 1989, several Milwaukee police officers were dispatched to North Teutonia Avenue in Milwaukee, Wisconsin in response to a report that shots had been fired. When the police officers arrived on the scene they saw Khalil Muhammad in the company of Anthony Edmonds. One of the officers approached Muhammad with his gun drawn as he had seen a silver object in Muhammad's hand and someone in the crowd had said that Muhammad had a weapon. The officer ordered Muhammad to stop, however, Muhammad fled on foot. Some of the officers at the scene followed Muhammad and, after a brief chase, he was apprehended. No weapon was found on Muhammad and, although one of the officers testified that he had seen Muhammad discard something during the chase, a weapon was never recovered.

As Muhammad fled on foot, Edmonds proceeded across Teutonia Avenue, entered a white Cadillac, and fled. Another officer at the scene pursued the vehicle and it was eventually stopped. The search of the vehicle incident to Edmonds' arrest, revealed a briefcase containing various papers bearing Muhammad's name and a .38 caliber Remington shell, two men's coats, and Thirty-four Thousand Three Hundred and Two Dollars ($34,302.00) in cash in the interior of the car. The police officers also found a loaded .45 caliber semi-automatic weapon in the trunk. In addition, the police officers recovered two beepers worn by Edmonds, one of which it was later determined had been rented in the name of Muhammad.

Later in the day on January 25, 1989, Agent Robert Hartman of the Drug Enforcement Agency applied for and received a search warrant for Muhammad's residence. Several federal agents thereafter executed the warrant, searching the residence located at 3885 North Sherman Boulevard in Milwaukee, Wisconsin. In the search, the agents found eight boxes of ammunition in the master bedroom closet and a scale. In addition, the agents found a drug ledger and other drug notes, reflecting drug activity, including phone numbers and street names of two of the individuals who were eventually charged as co-defendants with Muhammad.

At trial, Eugene Chaney Jr., who had been convicted of conspiracy to possess cocaine with intent to distribute and awaited sentencing, was called by the Government. He testified that beginning in late summer or early fall of 1988 he purchased cocaine from Muhammad. Chaney testified that he purchased a kilogram of cocaine from Muhammad on four occasions during the fall and winter of 1988. Thereafter, Muhammad introduced Chaney to his source, Michael Bond, and Chaney made

arrangements to make his future cocaine purchases from Bond.

A second co-defendant, Donald Thurmond, also testified at trial against Muhammad. He, like Chaney, was cooperating with the Government for consideration in sentencing. Thurmond testified that he met Muhammad at his home on Sherman Boulevard in December 1988. At that time, Thurmond and a person named Carl Wesley went to Muhammad's home to purchase a kilogram of cocaine. Thurmond testified that he and Muhammad agreed on a price for the cocaine and it was delivered to him later that day. Thurmond further testified that again in March of 1989 he met Wesley at Wesley's residence to purchase a kilogram of cocaine. Thurmond stated that he and Wesley were unable to agree on a price. Wesley made a phone call and Muhammad came to Wesley's residence. Thurmond thereafter overheard Muhammad tell Wesley to give the cocaine to Thurmond at the price he was requesting and the deal was consummated.

Agent Hartman also testified at trial. He stated that he was the chief case agent in the investigation of Muhammad and that he was in charge of the evidence recovered from the search of Muhammad's residence. During his direct examination the scale was admitted in evidence. In addition, the Government qualified Agent Hartman as an expert and he was permitted to testify that based upon his experience as a drug investigator the papers that were recovered from Muhammad's residence were drug notes, reflecting Muhammad's drug-trafficking activities.

At the time of trial, Agent Hartman was assigned to a task force in Bolivia. He was scheduled to leave the country in a matter of hours following the commencement of his testimony. Defense counsel, therefore, agreed to attempt to consolidate his direct examination of Agent Hartman with cross-examination. Defense counsel questioned Agent Hartman for a little over an hour. At that point, the district court cut off examination of Agent Hartman, over the objection of the defendant, and Agent Hartman was excused. The trial proceed-ed and Muhammad was convicted on two counts and acquitted on a third count.

## II.

Initially, Muhammad alleges that the district court erred in denying his motion to suppress evidence filed pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Muhammad filed his motion to suppress in the district court four days before the trial was scheduled to begin, well after the time limit set by the district court for filing pre-trial motions. In his motion, Muhammad alleged that Agent Hartman knowingly, or with reckless disregard for the truth, included false statements or made material omissions in his application for a search warrant. Muhammad's challenges were principally directed at the information obtained from confidential informant number one, Chaney, although Muhammad asserted that there was insufficient showing of the reliability of confidential informant number two and that the failure of Agent Hartman to explain what was meant by the phrase "a car associated with Muhammad" amounted to a material omission designed to mislead the Magistrate.

In considering Muhammad's *Franks* challenge, the district court initially determined that Muhammad had not made a sufficient preliminary showing to warrant a *Franks* hearing. The court also determined, however, that the principal focus of the challenge was to the information in the affidavit attributed to Chaney. The district court, therefore, excluded that information from consideration and determined that the remaining allegations in the affidavit were sufficient to support a finding of probable cause. Thus, the court denied the motion to suppress.

■ Where a search warrant is challenged on the basis of alleged falsities contained in the affidavit, the appropriate procedure for the district court to follow is to review the affidavit without the challenged portions to determine whether the unchallenged portion by itself establishes probable cause for the warrant to issue. *See United States v. Johnston*, 876 F.2d 589,

592 (7th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 364, 107 L.Ed.2d 350 (1989); *United States v. Balistrieri,* 779 F.2d 1191, 1206 (7th Cir.1985), *cert. denied,* 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1986). In this case, the district court followed that procedure. As such, our review is limited to the question of whether the district court erred in its determination that the allegations of the affidavit, without the information obtained from Chaney, were sufficient to establish probable cause.

▇▇▇ Probable cause is a fluid concept. *United States v. McNeese,* 901 F.2d 585, 592 (7th Cir.1990). It is to be determined from a totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "An affidavit has made a proper showing of probable cause when it sets forth facts sufficient to induce a reasonably prudent person to believe that a search ... will uncover evidence of a crime." *McNeese,* 901 F.2d at 592. We independently review the sufficiency of the search warrant affidavit, "recognizing that doubtful cases should be resolved in favor of upholding the warrant." *United States v. Malin,* 908 F.2d 163, 165 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990) (quoting *United States v. Rambis,* 686 F.2d 620, 622 (7th Cir. 1982)).

▇▇▇ The portion of the search warrant affidavit considered by the district court established that confidential informant number two was present at Muhammad's residence at 3885 North Sherman Boulevard within a week of the date of the application for the warrant, and had observed cocaine, a "chrome machinegun," and a scale. The affidavit also provided that the confidential informant was present at the residence on at least three other occasions in the three months prior to the issuance of the warrant. On each occasion, the informant saw cocaine, weapons, and a scale.

The affidavit also established that earlier in the day of January 25, 1989, Muhammad had been arrested after a brief foot chase. Prior to his arrest, Muhammad had been in the presence of Edmonds who fled from the scene in a Cadillac, which was also apprehended. A search of the Cadillac recovered over Thirty-four thousand dollars ($34,000.00) in United States currency, a chrome automatic weapon, Muhammad's overcoat, two pagers, and a briefcase containing documents identifying Muhammad.

In the search warrant affidavit, Agent Hartman indicated that the Milwaukee police detective with whom confidential informant number two had spoken could not vouch for his reliability. Nonetheless, we think that his reliability was established in other ways. The information which he provided about cocaine, weapons, and scales was based upon personal observations. Further, the confidential informant personally took the police detective to Muhammad's address and pointed out the residence. The search of the car recovered Muhammad's briefcase containing an electric bill, indicating that Muhammad was the subscriber for utility services at 3885 North Sherman Boulevard. In addition, the vehicle search recovered the currency, the beepers, and a chrome weapon like the one that the informant described as having seen at Muhammad's residence, all of which are indicative of involvement in drug activity and corroborative of the informant's observations.

Considering the affidavit under the totality of the circumstances, we conclude that probable cause existed justifying the issuance of the warrant. Muhammad's principal challenges to the portion of the affidavit considered by the district court concerned the failure to demonstrate the credibility of the confidential informant and the failure to disclose that Muhammad was not present in the Cadillac at the time it was searched. As previously stated, we think that the reliability of confidential informant number two was adequately demonstrated. In addition, we view Muhammad's assertions with respect to the vehicle as a veiled attempt to circumvent his lack of standing to challenge the search of the automobile which was neither owned by him nor in his possession at the time of the search. Although the affidavit could have more clearly explained the circumstances of the pur-

suit and apprehension of both Muhammad and Edmonds, noting that the two were together when the police arrived and that thereafter Muhammad fled on foot while Edmonds fled in the vehicle. We do not find that the affidavit misled the magistrate as to the fact that Muhammad was not in the car at the time of the search.

A review of the search warrant affidavit in this case indicates that, at worst, this is a close case where doubt is resolved in favor of upholding the warrant. We agree with the district court's determination that a consideration of the search warrant application without the information attributed to Chaney was sufficient to support a finding of probable cause to issue the warrant. Therefore, we find that the district court did not err in denying the motion to suppress.

### III.

Muhammad also alleges that the district court erred in stopping his examination of Agent Hartman, permitting Agent Hartman to catch a plane to Bolivia. Muhammad asserts that in so doing, the district court violated his confrontation rights.

It appears that on the second day of Muhammad's trial, the Assistant United States Attorney that was prosecuting this case approached defense counsel and informed him that Agent Hartman, the case agent in this case, was scheduled to leave the country later that day on an assignment. Defense counsel had subpoenaed Agent Hartman to testify in the defense case. The parties agreed that the Government would call Agent Hartman out of turn in its case in chief. In addition, counsel for both sides agreed that defense counsel would attempt to combine direct and cross-examination of the agent to expedite his departure. The court was informed of the procedure and agreed to it. The trial judge, however, left open the possibility that the agent might have to change his schedule if the examination could not be completed in accordance with Muhammad's confrontation rights.

During the Government's examination of Agent Hartman, the evidence he recovered from the search of Muhammad's residence was admitted, consisting primarily of drug notes, a ledger, and the scale. Agent Hartman was qualified as an expert and permitted to give his opinion, on the basis of his experience as a drug investigator, that the papers recovered from Muhammad's residence were in fact drug notes and a drug ledger.

Thereafter, defense counsel began his examination of Agent Hartman. Approximately the first quarter of that examination concerned general investigatory techniques used by the Drug Enforcement Administration. Over half of the examination focused on Agent Hartman's questioning of Chaney, the object of which seemed to be to demonstrate inconsistencies between Chaney's various statements. It should be noted that near the end of that portion of the examination, the Government stipulated the admissibility of Chaney's written statements given to Agent Hartman. The balance of the examination concerned Agent Hartman's application for a search warrant and a brief discussion, following notification by the district court that Agent Hartman was going to be excused, of questioning sessions that Agent Hartman had with other people involved in illegal narcotics trafficking in Milwaukee and the general failure of those individuals to implicate Muhammad.

It is well-established that the Sixth Amendment only guarantees the defendant the opportunity for effective, not limitless, cross-examination. *United States v. Williams*, 877 F.2d 516, 519 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 180, 107 L.Ed.2d 136 (1989) (citing *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985)). "The right to an opportunity for effective cross-examination, however, does not give defense counsel license to conduct the cross-examination as she chooses. A trial judge has broad discretion, *United States v. Wellman*, 830 F.2d 1453, 1465 (7th Cir. 1987), to impose reasonable 'limits on defense counsel's inquiry into the potential bias of a prosecution witness ... based on concerns about, among other things,

harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)." *United States v. DiCaro,* 852 F.2d 259, 261 (7th Cir.1988). Limitations on cross-examination do not interfere with the defendant's Sixth Amendment rights provided that cross-examination was sufficient "to enable a jury to evaluate [the defendant's] theory of defense and to make a discriminating appraisal of the witness's motives and bias." *United States v. Dombrowski,* 877 F.2d 520, 523–24 (7th Cir.), *cert. denied,* 110 S.Ct. 2592 (1990) (citations omitted).

■ At first blush, Muhammad's argument that the district court abused its discretion in cutting off his examination of Agent Hartman in midstream appears meritorious. Upon further consideration and review of the examination of Agent Hartman conducted by defense counsel, however, we conclude that the district court did not abuse its discretion in this instance.

The district court noted in the in-chambers discussion following the ruling that Agent Hartman would be excused, that despite defense counsel's knowledge that he was under some time pressure in this case, his examination was meandering and generally pointless. Our review of the examination does not lead us to conclude that the district court's characterization thereof was incorrect. Defense counsel spent nearly half of the time allotted for examination inquiring about general investigatory techniques, discussing the failure of other people that Agent Hartman had interrogated about drug activity to implicate Muhammad, and questioning Agent Hartman about the search warrant application, apparently in the hope of asking the district court to reconsider its ruling on the motion to suppress. The balance of the examination was focused on attempting to discredit Chaney's testimony by showing inconsistencies in his previous statements. Nonetheless, defense counsel asserted, both at the district court and on appeal, that he needed to examine Agent Hartman for a longer period of time to expose exculpatory evidence found in the search, to demonstrate that the drug notes admitted during Agent Hartman's direct examination were not Muhammad's, and to demonstrate that the scale was not a drug scale, but was instead a scale used to regulate Muhammad's diet.

It would seem that if defense counsel could elicit exculpatory evidence from Agent Hartman, knowing at the start of his examination that he was potentially under time restrictions, he would have sought to do so rather than concentrating on areas of far less comparative importance. Even if defense counsel made a tactical decision to cover other areas of examination first, his failure to attempt to elicit any exculpatory evidence even after notification from the district court that examination of the witness was about to be curtailed, creates a strong inference that no such exculpatory evidence existed in this instance. The district court apparently drew that inference and exercised its discretion in determining that the cross-examination of Agent Hartman had reached the point of diminishing returns. This court has previously noted that cross-examination has no natural limits and as such, the district court must set the limits in a case based upon its evaluation of the particular circumstances of that case. *United States v. Diaz,* 876 F.2d 1344, 1350 (7th Cir.1989) (citation omitted). Defense counsel's after-the-fact assertions that Agent Hartman could have provided exculpatory evidence had his examination continued seems to be largely directed at creating an issue on appeal. We do not find his assertions persuasive.

This case should not be read as an endorsement of a general procedure permitting district courts to curtail examination of case agents to expedite their return to other assignments. The limitations placed on Muhammad's ability to question Agent Hartman come very close to approaching an impermissible limitation on examination, resulting in a confrontation clause violation. Nonetheless, we do not find on the facts of this case that the district court abused its discretion in dismissing Agent Hartman.

## IV.

In his third issue on appeal, Muhammad alleges that the district court erroneously admitted other crimes evidence. Specifically, Muhammad challenges the admission of testimony concerning the shooting incident on Teutonia Avenue and the admission of the .38 caliber bullet found in his briefcase.

The Government contends that Muhammad failed to make an objection under Rule 404(b) of the Federal Rules of Evidence to the evidence he now is challenging, and therefore, the challenges must now be reviewed under the plain error doctrine. Muhammad asserts that he did lodge a specific Rule 404(b) objection to the evidence. We need not resolve this issue, however, because we do not find that the challenged evidence qualifies as other crimes evidence within the meaning of Rule 404(b).

■ A review of the record reveals that the evidence concerning the shooting incident was not detailed and principally was presented to the jury to put Muhammad's arrest and the search of the vehicle in context. That incident and the subsequent search revealed the evidence forming at least in part the basis for the indictment on the firearm possession count (of which Muhammad was acquitted by the jury) and for the ammunition possession count. As such, the testimony relating to the incident is not other crimes evidence, instead it was evidence of other acts which were intricately related to the charges for which Muhammad was indicted. The testimony was "directly relevant to the crimes charged;" therefore, "we need only analyze this evidence under Rule 403, and decide whether the prejudicial aspects of [the testimony] outweighed its probative value." *United States v. Hawkins*, 823 F.2d 1020, 1023 (7th Cir.1987). *See also United States v. Monzon*, 869 F.2d 338, 343 (7th Cir.), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989) ("[E]vidence of other acts or crimes which are 'intricately related to the facts of the case' are admissible without reference to Rule 404(b) so long as the probative value of the evidence outweighs its prejudicial effect.").

The evidence of the shooting incident was part and parcel of the search which produced the evidence forming the basis for the weapon and ammunition possession counts of the indictment. It was not unduly prejudicial, as a review of the record reveals, in that it was of limited duration and was principally an explanation of the events relating to the arrest and search designed to set the scene. We conclude that the district court did not abuse its discretion in finding that the probative value of the testimony was not outweighed by its prejudicial effect. Therefore, we find no error in the admission of the testimony.

■ Muhammad also alleges that the .38 caliber bullet recovered from his briefcase, which was received in evidence, constituted inadmissible other crimes evidence. As we will discuss in more detail below, the allegation that Muhammad was in possession of that bullet was encompassed within the ammunition possession charge contained in Count III of the indictment. Thus, the admission of that bullet in evidence at trial and the Government's reference thereto did not constitute an improper admission of other bad acts evidence. Instead, it was direct evidence of the crime for which Muhammad was indicted. The district court did not commit error in admitting the bullet in evidence. *See United States v. Rollins*, 862 F.2d 1282, 1295 (7th Cir.1988) (Reference to future drug transactions included within a count of the indictment was not other bad acts evidence, rather it was direct evidence of the crime charged.).

## V.

■ In his fourth allegation of error, Muhammad challenges the testimony of an Ameritech Service Manager, Laurie Ulrich, that one of the beepers found on Edmonds at the time of his arrest on January 25, 1989, was rented to Muhammad. Muhammad alleges that the Government did not lay a proper foundation for the admission of the business records, in that the witness was not the custodian of the records. She was not responsible for preparing the original and she had not seen the original, rath-

er, she was relying on a fax of the original sales record transmitted from Ameritech's record keeping facility in Schaumburg, Illinois to the Milwaukee sales office.

■ Muhammad's allegations with respect to the admission of the testimony concerning the beeper does not warrant extended discussion. Rule 803(6) of the Federal Rules of Evidence requires that a "custodian or qualified witness" testify that the various requirements of the business records exception are met prior to the admission of the record in evidence. " 'The phrase "qualified witness" is to be broadly interpreted as requiring only someone who understands the system.' " *United States v. Moore*, 791 F.2d 566, 574–75 (7th Cir. 1986) (quoting *United States v. Keplinger*, 776 F.2d 678, 694 (7th Cir.1985), *cert. denied*, 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986)). The exception does not require that the witness "personally participated in the creation or maintenance of the document, nor even know who actually recorded the information." *Keplinger*, 776 F.2d at 693 (citations omitted).

In this instance, Ulrich's testimony established that the sales and rental records were compiled each day at the branch offices and sent to Schaumburg, Illinois, the central location where Ameritech maintains its records. The record that Ulrich received from the Schaumburg office was kept in the regular course of business. Ulrich had knowledge of the procedures used by Ameritech in the creation and maintenance of the rental records for pagers. In addition, the record reflects that Muhammad was afforded the opportunity to inquire into the accuracy of the records and the reliability of the procedures used for creation and maintenance thereof. As such, the district court did not abuse its discretion in admitting the Ameritech rental records.

## VI.

Finally, Muhammad alleges that the district court improperly permitted an amendment to the indictment when it allowed argument concerning the briefcase bullet instead of confining the argument to the ammunition recovered in the search of 3885 North Sherman Boulevard. Count III of the indictment provides that "[o]n or about January 25, 1989 at or around 3885 North Sherman Boulevard, in the City of Milwaukee in the State and Eastern District of Wisconsin Jerry Jackson a/k/a Khalil Muhammad defendant herein, having previously been convicted in a court of the State of Wisconsin ... of a crime punishable by imprisonment for a term exceeding one year ... did knowingly possess in or affecting commerce ammunition for firearms; [a]ll in violation of Title 18, United States Code, §§ 922(g)(1) and 924(e)(1)."

In his brief on appeal, Muhammad argues that the Government committed prosecutorial misconduct when it referred to the bullet found in the briefcase and argued that the jury could rely on that evidence alone to convict Muhammad of Count III. Muhammad asserts, without citation to the record, that the district court sanctioned the improper conduct in its charge to the jury, by omitting the phrase "at or around 3885 North Sherman Boulevard" in reading the indictment. A review of the transcript reveals that the district court made no such error in reading Count III to the jury. The district judge read count III to the jury two times during his charge and each time the phrase "at or around 3885 North Sherman Boulevard" was included.

■ There still remains a question, however, of whether by admitting the briefcase bullet in evidence and permitting argument about that bullet, the district court improperly admitted evidence outside the scope of the indictment. Although, the wording of the indictment might be read to include only the ammunition recovered at Muhammad's residence at 3885 North Sherman Boulevard, we do not think that the indictment is so limited.

The use of the phrase "at or around" by its very nature suggests that the indictment could include possession of ammunition at a place other than Muhammad's residence. That phrase does not limit possession of ammunition to a particular location. Rather, it imposes general place re-

strictions on the possession charge which coincide with the general time restrictions imposed by the phrase "on or about January 25, 1989." Thus, the question becomes one of whether the indictment was sufficient to put the defendant on notice of the charges against him. We think that the indictment does so in this instance. Muhammad was charged with possession of ammunition at or around his residence on or around a certain date. The bullet at issue was found in Muhammad's briefcase seized on January 25, 1989, the very date of the allegations in the indictment. We think that the terms of the indictment were sufficiently expansive to encompass Muhammad's possession of ammunition in a location other than his residence on the specific date of the offense. Therefore, the admission of the bullet recovered from the briefcase and the argument with respect thereto did not constitute an amendment or variance of the indictment.

Even if we were to consider the introduction of the briefcase bullet as a variance of the indictment, however, any resultant error did not constitute a denial of Muhammad's Fifth Amendment rights in this case. In *United States v. Cina*, 699 F.2d 853 (7th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983), this court stated that "[i]n general, either an amendment or a variance [to an indictment] will be allowed to stand if it does not change an 'essential' or 'material' element to the charge so as to prejudice the defendant." *Id.* at 857 (citations omitted). The *Cina* court further noted that "[a]n 'essential' or 'material' element of the crime is one whose specification with precise accuracy is necessary to establish the very illegality of the behavior and thus the court's jurisdiction." *Id.* at 859. In this instance, the possession of the ammunition by a convicted felon is as illegal at one location as at another. Thus, the location where the offense took place is not an "essential" or "material" element of the crime as that term was defined in *Cina*. At best, Muhammad's claims of variance go to the factual allegations of the indictment. Consequently, any variance of the indictment that occurred was harmless.

*See United States v. Kramer*, 711 F.2d 789, 797 (7th Cir.), *cert. denied*, 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983) (Variances between the factual allegations of the indictment and the evidence at trial concerning the date of the offense, the place where the offense occurred, and the drug involved in the conspiracy were plainly harmless.).

In this case, the indictment was sufficient to apprise Muhammad of the charges against him. The reference to the residence in the indictment did not preclude the admission of evidence concerning Muhammad's possession of the ammunition located in his briefcase. The district court did not err in admitting the briefcase bullet and permitting the Government to argue that its existence was direct evidence of the crime charged in Count III.

## VII.

For all of the foregoing reasons, Khalil Muhammad's conviction is hereby

Affirmed.