UNPUBLISHED ORDER

Not to be cited per Circuit Rule 53

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted August 17, 2006[*]

Decided August 24, 2006

Before

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-3450

| | |
|---|---|
| QUINSHELA BROWN,<br>    *Plaintiff-Appellant,*<br><br>v.<br><br>CHICAGO TRANSIT AUTHORITY<br>RETIREMENT PLAN,<br>    *Defendant-Appellee.* | Appeal from the United States<br>District Court for the Northern<br>District of Illinois, Eastern Division<br><br>No. 01 C 9340<br><br>Blanche M. Manning,<br>Judge. |

ORDER

Quinshela Brown, a former bus driver for the Chicago Transit Authority, brought this action alleging that the CTA's Retirement Plan illegally reduced her pension benefits after she filed several lawsuits against the CTA due to her discharge. The district court initially dismissed Brown's suit in its entirety for

---

[*] This successive appeal has been submitted to the same panel that heard the original appeal. See Operating Procedure 6(b). After examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. See Fed. R. App. P. 34(a)(2).

failure to state a claim. On appeal we concluded that Brown had adequately pleaded a First Amendment retaliation claim against the Plan and remanded for further proceedings. *Brown v. Chi. Transit Auth. Pension Bd.*, 86 Fed. Appx. 196 (7th Cir. 2004) (unpublished order). In a well-reasoned decision, the district court subsequently granted summary judgment in favor of the Plan.

On appeal Brown challenges the grant of summary judgment, renewing for the most part the arguments she presented to the district court. But our de novo review of the record reveals no err by the district court. See *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 808 (7th Cir. 2005) (instructing that we must review district court's grant of summary judgment de novo, viewing all facts and inferences in non-movant's favor). Accordingly, we AFFIRM for the reasons given by the district court in its memorandum and order dated July 22, 2005.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| QUINSHELA BROWN,<br>    Plaintiff, | ) | |
| | ) | |
| | ) | |
|      v. | ) | 01 C 9340 |
| | ) | |
| CHICAGO TRANSIT AUTHORITY | ) | |
| RETIREMENT PLAN, | ) | |
|     Defendant. | | |

## MEMORANDUM AND ORDER

Plaintiff Quinshela Brown claims that defendant Chicago Transit Authority Retirement Plan retaliated against her in violation of 42 U.S.C. § 1983 by illegally modifying her pension benefits after she filed multiple lawsuits against her union and her former employer, the Chicago Transit Authority, regarding her discharge. The CTA Retirement Plan seeks summary judgment pursuant to Fed. R. Civ. P. 56. For the following reasons, the CTA Retirement Plan's motion is granted.

## I.    Background

The following facts are undisputed unless otherwise noted.

### A.    Brown's Employment History with the CTA

Quinshela Brown was born on December 11, 1945. The CTA initially hired her as a bus operator on May 27, 1975. Between 1975 and 1981, pursuant to the terms of the Retirement Plan for Chicago Transit Authority Employees ("the Plan"), Brown contributed a portion of her wages toward her CTA pension. On March 17, 1981, Brown was separated from her employment with the CTA. Brown subsequently instituted a grievance related to her separation. The parties settled and the CTA reinstated Brown to her position as a bus operator on August 15, 1983. The

settlement agreement provided, in relevant part, that ". . . . the CTA will reinstate Quinshela Brown to the position of bus operator with full seniority." Brown again separated from her employment with the CTA on or about July 22, 1996.

**B.    The CTA Retirement Plan**

**1.    Normal Retirement**

Pursuant to § 9.1 of the Plan, "the normal retirement date shall be the first day of the month following the employee's sixty-fifth (65th) birthday." When Brown separated from the CTA on July 22, 1996, she was 50 years old so she did not qualify for "normal retirement" under § 9.1 of the Plan.

**2.    Early Retirement**

Section 10 of the Plan addresses "early retirement" and provides that:

Any employee in good standing may retire voluntarily on or after January 1, 1984 and after [s]he:

(a)    Has attained the age of fifty-five (55) years and shall have been employed for at least (3) years of continuous service, or

(b)    Has completed twenty-five years or more of continuous service.

Whereupon said retired employee shall receive an old-age retirement allowance for life reduced in accordance with Paragraph 10.2.

When Brown left the CTA on July 22, 1996, she had neither achieved the age of 55 nor had she completed twenty-five years or more of continuous service with the CTA. Thus, she did not qualify for "early retirement" as of July 22, 1996. *See* Plan at § 10.1.

### 3.    Deferred Vested Old-Age Retirement Allowance

CTA employees who are not eligible for "early retirement" or "normal retirement" may nevertheless be eligible for a Deferred Vested Old-Age Retirement Allowance ("deferred retirement") if they become separated from the service of the CTA (other than by death) on or after January 1, 1974, have completed ten or more years of continuous service, and are not otherwise eligible for a retirement allowance. Plan at § 11.1. To receive deferred retirement benefits, an eligible employee must "elect not to receive the refund of [her] contributions [to the Plan], with interest," must make this election "in writing on a properly executed form provided for that purpose and filed with the Committee," and must file her application for deferred retirement benefits not earlier than ninety days prior to the former employee's sixty-fifth birthday. Plan at §§ 11.2 & 11.4. Brown will become eligible for the deferred retirement benefit on her sixty-fifth birthday (December 11, 2010).

### 4.    Refund of Pension Contributions

Pursuant to the Plan, former CTA employees may also request a total refund of all pension contributions. Plan at § 15.2 ("Contributions made from and after the effective date of the Plan by any employee who becomes separated from the service of the CTA . . . . shall be refunded with interest at the rate hereinafter specified, less benefits received under the Plan"). An employee who elects to receive a whole or partial refund "shall be entitled to no further rights, benefits or allowances" under the Plan unless she "returns to work after service . . . . or is reinstated . . . . and remits to the CTA for payment into the Fund the amount previously refunded to [her]." *Id.* If that occurs, she "shall have the same rights under the Plan that [s]he would have had if [s]he had not received the refund." *Id.*

-3-

### 5.    Continuous Service Provision

The Plan also provides that an employee who is terminated does not have a break in service if she is reinstated within three years after the date of her termination "in the job classification occupied at the date of such termination, with seniority rights." Plan at §3.7(3). However, if an employee received a refund of her pension contributions and then was reinstated, she must repay the amount previously refunded to her to have the same rights under the Plan that she would have had if she had not received a refund. Plan at § 15.2(1).

### C.    Brown's Pension Benefits

Immediately after her termination in March of 1981 and pursuant to § 15.2 of the Plan, Brown requested a refund of her pension contributions from May 27, 1975 to March 17, 1981, and the Plan sent Brown a check in the amount of $5,134.04 (Brown's pension contributions plus interest). Brown did not refund the $5,134.04 to the Plan after her reinstatement on August 15, 1983.[1]

According to the Plan, on November 3, 1983, it mailed Brown a letter confirming that after her reinstatement, she had not filed any paperwork indicating that she wanted to pay back the retirement benefits that had been refunded to her. The Plan also asserts that the letter advised Brown that she needed to pay back the withdrawn pension contributions within ninety days to retain her original pension seniority date. On the other hand, Brown contends that she did not receive the Plan's letter in 1983 and did not know about the 90-day deadline. She also claims

---

[1] Brown has never sought a refund of the pension contributions from August 15, 1983 to July 22, 1996 (*i.e.*, from the date of her reinstatement to the date of her second separation from the CTA).

that she saw the letter for the first time at some point between 2000 and 2002, when it was produced in discovery.

The Plan contends that two days after it sent the November 3rd letter which Brown says she did not receive, Brown signed a form acknowledging that she was unable to immediately reimburse the refunded retirement benefits. The form also acknowledges Brown's receipt of a copy of Section 15.2 of the Plan (which contains provisions regarding the impact of an employee's failure to repay refunded benefits). Brown claims that she does not recall signing the form and asserts that the first time she ever saw the form was at some point during the pendency of an unrelated case she had filed against the CTA. At her deposition, Brown testified that her name was written on the form, but that there was no reason for her to have signed any statement regarding repayment of the pension contributions because the settlement agreement related to her reinstatement restored her to full seniority without the need to repay the contributions.

The Plan contends that it sent a second letter to Brown on November 17, 1983, notifying her that she had until November 23, 1983, to remit the pension refund back to the Plan to retain her original seniority rights. At her deposition, Brown alleged that she was never informed that if she failed to repay the $5,134.04 pension refund, her pension seniority date would be calculated from August 15, 1983. She also reiterated her belief that the settlement agreement spoke for itself and supported her position that she had full seniority regardless of whether she remitted the refund or not.

The Plan also contends that it sent Brown a third letter on December 20, 1983, informing Brown that her new pension seniority date was August 15, 1983. At her deposition, the Plan's attorney showed this letter to Brown, who asserted that she was seeing it for the first time.

The Plan and Brown thus have a fundamental disagreement as to whether the Plan sent, and Brown received, the three letters regarding the impact of Brown's failure to pay back her pension refund on her pension seniority date. As noted above, Brown contends that she did not receive the letters in a timely fashion. The Plan has submitted an affidavit from Tom Collins, who is the current Deputy Director for the Plan. Collins was not employed by the Plan in 1983 and thus had no involvement with drafting or mailing any of the correspondence allegedly sent to Brown. Collins has no independent knowledge of any of the letters besides the fact that they exist in Brown's file.

Over the years, Brown filed a number of lawsuits against the CTA. In this action, Brown claims that the Plan retaliated against her by modifying her pension benefits in response to the filing of the actions against the CTA. In response, the Plan argues that it accurately calculated Brown's pension and that she is not entitled to any benefits until she turns sixty-five.

## II.   DISCUSSION

### A.   Standard of Review on a Motion for Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." *Federal Rules of Civil Procedure 56(c); Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992). Further, a court should grant summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Id.*

### B.     Brown's First Amendment Claim Under § 1983

Brown argues that the Plan retaliated against her and thus violated her First Amendment rights by illegally modifying her pension benefits after she filed several lawsuits against the CTA regarding her discharge and the CTA's alleged discrimination against her based on her gender. To establish a 42 U.S.C. § 1983 claim based on retaliation for exercising a First Amendment right, Brown must prove that: (1) her speech was constitutionally protected, and (2) the Plan retaliated against her because of that speech. *Kyle v. Morton High School*, 144 F.3d 448, 454 (7th Cir. 1998). Here, Brown cannot satisfy either prong.

To establish that her speech was constitutionally protected, Brown's speech must touch on matters of public concern. *See Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1350 (7th Cir. 1995). A dispute between an employer and employee is not necessarily a matter of public concern, especially where the employee's complaint is entirely personal in nature. *Id.* To determine if speech is public or private, the court considers whether an employee is "complaining about matters private to himself, such as whether he was being paid enough or was given deserved promotions, as compared to an employee who is engaged in whistle blowing or otherwise going public with matters in which the public might be expected to take an interest ." *See Eberhardt v. O'Malley*, 17 F.3d 1023, 1026 (7th Cir. 1994).

Here, Brown has failed to point to any evidence showing that her previous lawsuits addressed matters of public concern. In remanding this case, the Seventh Circuit noted that Brown's "garden variety" employment suits did not merit first amendment protection. *Brown v. Chi. Transit Authority Pension Bd.*, No. 03-1079 (7th Cir. Jan. 12, 2004) (unpublished order). It also observed, however, that Brown's sex discrimination suit might potentially be protected

speech. *See id.* Despite this broad hint, Brown's response to the Plan's summary judgment motion wholly fails to point to any details regarding her sex discrimination suit or to discuss this issue. The court thus finds that she has failed to create a triable question of fact as to whether her sex discrimination case was protected speech.

Brown has also failed to show that the Plan took any adverse action with respect to her retirement benefits, let alone that it took adverse action to retaliate against her because of her speech. Brown argues that her pension seniority date should be set at May 27, 1975 (the date that the CTA initially hired her). The record shows, however, that Brown's pension seniority date was August 15, 1983 (the date of her reinstatement) because she failed to repay the contributions that she had withdrawn prior to her reinstatement.

This is the case despite Brown's contention that under § 3.7(3), she was not required to pay back the pension contributions in order to take advantage of the May 27, 1975, date. As noted above, the Plan provides that if "an employee who received a refund returns to work after service with the terms of Paragraph 3.7(2) or is reinstated within the terms of Paragraph 3.7(3) and remits to the Authority for payment into the Fund the amount previously refunded to him . . . shall have the same rights under the Plan that he would have had if he had not received the refund." Plan at § 15.2(1).

Brown was reinstated under § 3.7(3) with "full seniority." *See* Plan at § 3.7(3) (an employee who is terminated does not have a break in service if she is reinstated within three years after the date of her termination "in the job classification occupied at the date of such termination, with seniority rights"). Under § 15.2(1), an employee who is reinstated pursuant to § 3.7(3) must repay withdrawn pension contributions to retain the same rights under the Plan that

she would have had if she had not received a refund. Thus, Brown's reading of § 3.7(3) is incorrect.

The court also notes that much of Brown's response memorandum is taken up by her argument that the three letters sent by the Plan to Brown regarding the withdrawn contributions are inadmissible. This argument is irrelevant as Brown has not pointed to any portion of the Plan which states that the Plan's provisions regarding withdrawn contributions are only effective if the Plan repeatedly reminds participants of the existence of those provisions.

In any event, Brown's claim that the letters are inadmissible hearsay because they are supported by the testimony of Tim Collins, who did not write them, is wrong. Under the Federal Rules of Evidence, documentation of events "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of that regularly conducted business activity" is admissible if a qualified witness testifies that the document was made in the regular course of business. Fed. R. Evid. 803(6). A witness is "qualified" if he understands his company's record-keeping system, regardless of whether he personally participated in the document's creation. *See United States v. Muhammad*, 928 F.2d 1461, 1469 (7th Cir. 1991).

Collins' testimony was based upon documents in Brown's file, and the record shows that these documents were "maintained in the ordinary course of business by the CTA Retirement Plan." Collins Aff. at ¶1. The business records rule does not require the Plan to locate the person who wrote and/or sent the letters to present the letters to the court. *See United States v. Muhammad*, 928 F.2d at 1469. Moreover, Brown offers no concrete evidence suggesting that the letters are untrustworthy. *See Coates v. Johnson & Johnson*, 756 F.2d 524, 549 (7th Cir. 1985) (the business records exception is intended to permit the admission of records maintained

in the regular course of business unless the source of information or the method of preparation indicate a lack of trustworthiness).

Instead, she asserts that she does not recall seeing the letters before they were produced in connection with litigation. Brown's inability to remember the letters is not enough to create a disputed issue of material fact as to the letters' authenticity. *See Fogle v. Williams Chevrolet/GEO, Inc. an Bank One Wisconsin*, No. 00 C 50227, 2002 WL 1433736 at *1 (N.D. Ill. Jul. 2, 2002) (failure to recall signing a document does not invalidate the validity or effect of the document); *see also Rocket v. Marten Transport Ltd.*, No. 99 C 3957, 2001 WL 1155256 at *6 (N.D. Ill. Sept. 28, 2001) (the plaintiff's inability to recall instances of misconduct did not create a genuine issue of material fact sufficient to defeat a motion for summary judgment). Accordingly, Collin's testimony is admissible.

The court also rejects Brown's contention that the settlement agreement executed when she was reinstated in 1983 somehow obviated her need to comply with the Plan's provisions regarding the repayment of withdrawn pension contributions. The Plan is unambiguous: Brown was reinstated with full seniority under § 3.7(3), and under § 15.2(1), an employee who is reinstated pursuant to § 3.7(3) must repay withdrawn pension contributions to retain the same rights under the Plan that she would have had if she had not received a refund. Moreover, the settlement agreement does not contain any language which supports Brown's position. In addition, the November 4, 1983, notice bearing Brown's signature, which is properly before the court, was executed after the Settlement Agreement and specifically acknowledges that Brown was informed of her obligation to refund the Plan in the amount of $5,134.04 by November 13, 1983 to maintain her pension seniority date of May 27, 1975.

-10-

The only evidence that Brown has to the contrary is her own statement that an unspecified person told her at an unspecified time and place unspecified words to the effect that she did not have to repay the withdrawn pension contributions. To defeat a motion for summary judgment, however, the nonmoving party must produce "evidence of evidentiary quality." *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994). Evidence satisfies this standard if it would be admissible at trial. *Id.*, citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A proper foundation for a conversation must include information as to when and where the conversation occurred, who was present, and who said what to whom. *See, e.g., Houk v. Village of Oak Lawn*, No. 86 C 139, 1987 WL 7498 *2 (N.D. Ill. Feb. 26, 1987), *citing* Mauet, Fundamentals of Trial Techniques 123 (1980). Because Brown's testimony does not meet this standard, it is inadmissible and thus is irrelevant for summary judgment purposes.

## C.    Punitive Damages

Brown admits that she is not currently entitled to either "normal" or "early" retirement benefits, and thus concedes that she has not presently suffered any damages. She nevertheless asserts that the Plan is liable for punitive damages based on its retaliatory calculation of her future retirement benefits under § 3.7(3). It is true that punitive damages are recoverable under § 1983 even in the absence of actual damages if the defendant's conduct was "motivated by evil intent or involv[ed] reckless or callous indifference to the federally-protected rights of others." *Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001) (internal citations omitted). The Plan clearly did not act based on this type of animus given that it correctly calculated Brown's benefits. *Cf. Donahue v. Staunton*, 471 F.2d 475, 483 (7th Cir. 1972) (awarding damages where

the plaintiff prevailed on the merits of her first amendment claim).  Accordingly, Brown is not entitled to punitive damages.

## III.    Conclusion

For the foregoing reasons, the defendants' motion for summary judgment [101-1] is granted.  The clerk is directed to enter a Rule 58 judgment and to terminate this case.

DATE:        July 22, 2005                              _____Blanche M. Manning_____
                                                        Blanche M. Manning
                                                        United States District Judge