**UNITED STATES of America, Plaintiff,**

v.

**Jeffrey ERICKSON, Defendant.**

**No. 91 CR 1017.**

United States District Court,
N.D. Illinois, E.D.

June 23, 1992.

---

Victoria J. Peters, Lisa K. Osofsky, U.S. Attys. Office, Chicago, Ill., for plaintiff.

Richard R. Mottweiler, Chicago, Ill., for defendant.

## ORDER

ALESIA, District Judge.

Now before the court are various pretrial motions filed by defendant Jeffrey Erickson ("Erickson" or "defendant"). The government filed a consolidated response. Erickson did not file a reply. In addition, the government filed pretrial motions. For ease of discussion, the court first addresses each of Erickson's motions separately. Thereafter, the court addresses the government's motions.

### I. ERICKSON'S MOTIONS

#### A. *Motion to Serve Subpoenas*

In this motion, Erickson seeks an order permitting him to issue subpoenas *duces tecum* pursuant to Federal Rule of Criminal Procedure 17(c). This motion is granted as the government has no objection. On a related note, to the extent that the defense intends to introduce at trial documents obtained through these subpoenas, they are ordered to provide the government copies of the documents prior to trial. *See* FED.R.CRIM.P. 16(b)(1).

#### B. *Motion for Production of Favorable Evidence*

Next, Erickson seeks an order compelling the government to disclose a wide array of evidence which is favorable or which will lead to favorable evidence to Erickson or bears upon the credibility of any government witness pursuant to the dictates of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Federal Rule of Criminal Procedure 16. As Erickson also seeks impeaching information he should have cited to *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

First, to the extent that Erickson's requests for information fall within the scope of *Brady*, the government's promise to comply with the dictates of *Brady* renders Erickson's motion moot. Further, the government represents that it is not aware of any *Brady* material at present. However, the government has acknowledged its continuing obligations under *Brady* to produce such material, if any exists. Based on these representations, the court denies as moot those portions of Erickson's motion which seek to discover exculpatory information under the authority of *Brady*.

With respect to the *Giglio* material, the government represents that it will disclose impeaching information to Erickson in enough time to satisfy due process. In our view, this noncommittal statement is not sufficient. The court directs the government to disclose all material impeachment evidence tending to undermine the credibility of any important government witness. *Barkauskas v. Lane*, 878 F.2d 1031, 1033 (7th Cir.1989). The government is reminded that any doubt as to whether disclosure is required should be resolved in favor of disclosure. The government shall provide Erickson with *Brady* and *Giglio* materials on or before June 29, 1992. This motion is accordingly, granted in part and denied in part as moot.

#### C. *Motion in Limine and for Evidentiary Hearing*

In his motion *in limine*, Erickson seeks to exclude coconspirator statements pursuant to Federal Rule of Evidence 802. Furthermore, Erickson requests that this court conduct an evidentiary hearing to determine the admissibility of coconspirator statements. Alternatively, Erickson seeks an order directing the government to submit a written proffer pursuant to *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), detailing any coconspirator statements which it intends to introduce at trial. As the government represents that it does not intend to introduce any coconspirator statements at trial, this motion is denied as moot.

### D. *Motion to Produce Electronic and Mechanical Surveillance*

In his next motion, Erickson requests that the government disclose any and all electronic and mechanical surveillance conducted during the course of the investigation in this criminal case. In response, the government states that there were no wiretaps and that there were no consensually monitored telephone conversations or meetings. Furthermore, the government states that there was electronic monitoring of the locations of the two stolen automobiles used by Erickson on December 15 and 16, 1991. Therefore, to the extent that the government admits there was electronic monitoring, the government is ordered to produce to the defense those documents, if any exist, which authorize such surveillance on or before June 29, 1992. Accordingly, Erickson's motion is granted.

### E. *Motion to Disclose "Other Acts" Evidence*

■ Next, Erickson seeks notice of the government's intention to use evidence during cross-examination, its case-in-chief and rebuttal, which is admissible at trial pursuant to Federal Rules of Evidence 404(b) and 608(b). As the government has filed its Rule 404(b) proffer, that portion of Erickson's motion is denied as moot. The government makes no mention of whether it intends to introduce any evidence under Rule 608(b). Erickson cites no case law for the proposition that he is entitled to advance notice of Rule 608(b) evidence. Accordingly, that portion of Erickson's motion is denied.

We now address the government's "other acts" proffer. The government seeks to admit evidence of the November 4, 1991 shooting of a Palatine police officer against Erickson pursuant to Rule 404(b) of the Federal Rules of Evidence and the "inextricably intertwined" standard established by the Seventh Circuit. Erickson filed a memorandum in opposition. On June 17, 1992, the government filed its response. Because we believe the probative value of this evidence is substantially outweighed by its prejudicial effect, the government's proffered "other acts" evidence is not admissible against Erickson under either theory.

#### 1. *Rule 404(b)*

Rule 404(b) excludes evidence of other crimes, wrongs or acts, "to prove the character of a person in order to show action in conformity therewith." FED.R.EVID. 404(b). This circuit has established a four-part test to analyze the admissibility of "other acts" evidence under Rules 403 and 404(b). Other crimes evidence may be admitted where the following is established:

> (1) the proffered evidence must be relevant to a matter in issue other than the defendant's propensity to commit the charged crime; (2) the prior bad act must be similar in nature and close in time to the crime charged; (3) the prosecution must establish that the defendant in fact committed the prior bad act; [and] (4) the probative value of the evidence must not be outweighed by its prejudicial effect.

*United States v. Goodapple*, 958 F.2d 1402, 1406–07 (7th Cir.1992); *see also United States v. Scop*, 940 F.2d 1004, 1009 (7th Cir.1991); *United States v. Briscoe*, 896 F.2d 1476, 1499 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). "The fourth prong of the test covers Rule 403, which provides for exclusion of relevant evidence on grounds of prejudice, confusion or waste of time." *United States v. Goodapple*, 958 F.2d at 1407.

In the case at bar, the government seeks to introduce evidence that on November 4, 1991, Erickson shot a Palatine police officer while the police officer was attempting to make a routine traffic stop. In order to establish that Erickson was the individual involved in the shooting of the police officer the government's proffer reveals that there is positive identification of Erickson as the shooter by an eye-witness. In addition, forensic tests reveal that the markings on the shell casings from the discharged bullets at the scene of the shooting match exactly the markings on shell casings that were discharged from a .223 caliber gun recovered from Erickson's home. Furthermore, the government argues that evidence relating to the shooting of the

Palatine police officer, which occurred during the conspiracy charged in the indictment, is admissible under Rule 404(b) because it establishes identity, common scheme and plan.

We have carefully reviewed the government's proffer, and are satisfied that the first three elements for admissibility have been established. However, we find that the government has not and cannot satisfy the fourth prong of the test. In our view, this "other acts" evidence is unduly prejudicial and highly inflammatory. We are concerned that this conduct (which is not the basis of any criminal charge in federal court) bears minimal relation to the offenses charged in the indictment and will be misused by the jury.

In addition, we want to make one point abundantly clear. We vehemently disagree with the government's suggestion in its reply that a "sanitized" version of the events of November 4, 1991, can be presented to the jury. We can conceive of no way in which this other acts evidence can be presented to the jury without unduly prejudicing the defendant. Accordingly, the government's proffered "other acts" evidence is not admissible against Erickson under Rules 403 and 404(b).

### 2. *Inextricably Intertwined Standard*

■ Alternatively, the government argues that this conduct is inextricably intertwined with the charged offenses of auto theft, intimidating law enforcement officers and obstructing law enforcement efforts, and that the evidence involving Erickson's shooting of the police officer is essential to complete the background and development of the charged offenses. (Government's Response, pp. 39–41.) *See United States v. Scop*, 940 F.2d at 1008; *United States v. Roberts*, 933 F.2d 517, 520 (7th Cir.1991). At the outset, we recognize that inextricably intertwined evidence is admissible without reference to Rule 404(b). *See United States v. Goodapple*, 958 F.2d at 1408 (and cases cited therein). How-

ever, under this standard the court must still determine that the probative value of the evidence outweighs its prejudicial impact. *United States v. Muhammad*, 928 F.2d 1461, 1468 (7th Cir.1991); *United States v. Roberts*, 933 F.2d at 520; *United States v. Monzon*, 869 F.2d 338, 343 (7th Cir.), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989). In analyzing the evidence under Rule 403, we once again conclude that the probative value of this evidence is substantially outweighed by its prejudicial effect. Accordingly, evidence of Erickson's alleged shooting of the Palatine police officer is not admissible under the inextricably intertwined standard established by this circuit.

One final point bears mentioning. We are extremely troubled by the government's cavalier assertion in its reply filed on June 17, 1992, requesting that this court rule sufficiently in advance of the trial date so it may consider superseding the indictment to add allegations relating to the shooting evidence to the conspiracy charge. The government's eleventh hour statement that it may supersede the indictment in this case, more than four months after a firm trial date was set, causes this court to question the government's motivation.

### F. *Motion to Sever Counts*

■ In this motion, Erickson seeks an order severing the individual counts within this indictment pursuant to Federal Rule of Criminal Procedure 8(a). To say the least, Erickson's motion is not the model of clarity. In fact, it is unclear whether Erickson requests that Counts 2 through 24 be severed from Count 1 (conspiracy), or, that each of the twenty-four counts in the indictment be severed from every other count. In any event, we deny Erickson's motion to sever the individual counts from the indictment because such action is not warranted under Federal Rules of Criminal Procedure 8(a) and 14.

Joinder of offenses under Rule 8(a)[1] is permissible where "offenses are (1) of the

---

**1.** Rule 8(a) provides, in relevant part, as follows: "Two or more offenses may be charged in the same indictment ... in a separate count for

each offense if the offenses charged, ... are of the same or similar character or are based on the same act or transaction or on two or more

same or similar character, or (2) based on the same act or transaction, or (3) based on two or more acts or transactions connected together or constituting parts of a common scheme or plan." *United States v. Alvarez*, 860 F.2d 801, 823 (7th Cir.1988). Erickson challenges the joinder of all 24 counts in one indictment. However, Erickson's motion does not intelligently apprise this court or the government which counts he contends should be severed. Instead, Erickson argues that severance of *unidentified* counts is warranted because the charged offenses did not occur over a relatively short period of time and because the charged offenses are not based on the same act or transaction. We do not agree.

In our view, joinder of the conspiracy count (Count 1), the bank robbery and gun charge counts (Counts 2 through 17), the obstruction of justice count (Count 18) and the possession of firearms counts (Counts 19 through 24) is appropriate. Erickson fails to realize that joinder of all offenses is appropriate where the substantive criminal offenses are part and parcel of the same conspiracy charged in the indictment. *United States v. Balzano*, 916 F.2d 1273, 1280 (7th Cir.1990) (joinder of witness intimidation count with extortion and RICO conspiracy counts appropriate under Rule 8(a) because part of the same criminal scheme). Here, the conspiracy count (Count 1) charges that Erickson committed each of the overt acts set forth in substantive Counts 2 through 24. Clearly, joinder of all these counts is proper where the illegal acts were committed by Erickson in furtherance of a single, ongoing conspiracy. We are satisfied that there is sufficient continuity among these acts on the face of the indictment to comport with Rule 8(a) of the Federal Rules of Criminal Proce-

dure. Accordingly, Erickson's motion is denied.

However, this does not end our inquiry. In an effort to ensure a complete record, the court has independently[2] considered whether Rule 14 of the Federal Rules of Criminal Procedure requires severance of the individual counts.[3] "Once the Rule 8 requirements [are] met by the allegations in the indictment, severance thereafter is controlled entirely by Federal Rule of Criminal Procedure 14...." *United States v. Alvarez*, 860 F.2d at 824 (quoting *United States v. Lane*, 474 U.S. 438, 477, 106 S.Ct. 725, 746, 88 L.Ed.2d 814 (1986)). We conclude that severance is not required by Rule 14. Erickson has not demonstrated that he will have an unfair trial absent severance of the individual counts. *See United States v. Caliendo*, 910 F.2d 429 (7th Cir.1990). In fact, Erickson's motion does not even begin to address how he will be actually prejudiced absent severance. This additional reason warrants denial of his motion.

### G. *Motion to Suppress Lineup Identifications*

In this motion, Erickson requests a hearing and seeks an order suppressing any lineup identifications. He mounts a two-pronged attack. First, he contends that it was improper to exclude his attorney, Maureen Shishem ("Shishem"), from interviews conducted by FBI agents of those witnesses who viewed the lineup. Second, he asserts that the lineup was unduly suggestive because Erickson "had noticeable marks on his wrists from handcuffs." (Motion to Suppress, p. 2.) We disagree with Erickson on both scores.

At the outset, the court notes that Erickson does not expressly argue that he was deprived of his Sixth Amendment right

acts or transactions connected together or constituting parts of a common scheme or plan." FED.R.CRIM.P. 8(a). Rule 8(a) is properly applied only to offenses joined against a single defendant. *United States v. Alvarez*, 860 F.2d 801, 823 (7th Cir.1988).

**2.** For some inexplicable reason, Erickson failed to address Federal Rule of Criminal Procedure 14 which permits severance if the defendant or

government would be prejudiced by the joinder of offenses.

**3.** Federal Rule of Criminal Procedure 14 provides, in relevant part, that: "If it appears that a defendant ... is prejudiced by a joinder of offenses ... in an indictment ... the court may order an election or separate trials of counts ... or provide whatever other relief justice requires." FED.R.CRIM.P. 14.

to counsel. Such an argument would fail because Erickson had no Sixth Amendment right to have counsel present at his lineup. A defendant's right to counsel attaches when the prosecution begins formal criminal proceedings against the accused. In *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the Supreme Court enumerated five starting points implicating a defendant's right to counsel: "formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. at 689, 92 S.Ct. at 1882. The pre-indictment lineup conducted on January 31, 1992, was part of the investigation, not prosecution of the case. At this juncture, the government had not brought formal charges against Erickson. Clearly, Erickson had no constitutional right to counsel at this point in time.

■ Nonetheless, Shishem was invited to attend the lineup and she did so. Even though Erickson had no right to counsel at the lineup, he argues that he was deprived of his right to counsel because of the manner in which Shishem was excluded from the lineup process. In her affidavit, Shishem states that government agents denied her request to be present at the interviews of the witnesses to the lineup. (Shishem Aff., par. 4.) She further states that "I observed witnesses talking, including conversations with Government Agents who I also observed talking; I was not allowed by the Government Agents to be privy to what was said or who said what except the bits and pieces that I could overhear...." (Shishem Aff., par. 5.) Erickson wholly fails to cite any case law in support of his position that he has a right to have his attorney present at the interviews of witnesses to the lineup. This is not surprising. It logically follows that because he had no constitutional right to have an attorney present at the lineup, he likewise had

no right to have an attorney present during agent interviews of witnesses who viewed the lineup. We categorically reject Erickson's first argument.

■ As his second avenue of attack, Erickson asserts that the lineup was unduly suggestive and conducive to mistaken identification because he had noticeable marks on his wrist from handcuffs. The court must undertake a two-step inquiry in addressing due process challenges to identification testimony. First, the "defendant must prove that the challenged identification was preceded by unnecessarily suggestive police procedures." *Rodriguez v. Young*, 906 F.2d 1153, 1161 (7th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 698, 112 L.Ed.2d 688 (1991); *see, e.g., Montgomery v. Greer*, 956 F.2d 677, 681 (7th Cir. 1992). Second, if the court determines that the lineup was corrupted by prior suggestion, the identification testimony is still admissible if it remains reliable under the totality of the circumstances. *Rodriguez v. Young*, 906 F.2d at 1161–62 (citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977)). Reliability is the linchpin.[4]

We need not undertake the second inquiry because we conclude the lineup was not unduly suggestive. It is Erickson's burden to prove undue suggestion. *Rodriguez v. Young*, 906 F.2d at 1162. In support of his position, Erickson offers the affidavit of Shishem in which she states that the defendant "had noticeable marks on his wrists which appeared to be handcuff marks and that no other lineup participant had such marks on their wrists that I could notice." (Shishem Aff., par. 6.) To counter Shishem's affidavit, the government attached to its response photographs of the lineup upon which Erickson's motion is based.[5]

---

4. The following factors are relevant to evaluating an identification's reliability: "(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the time of confrontation, and (5) the length of time between the crime and confrontation." *Mont-*

gomery v. Greer, 956 F.2d at 681 (quoting *Kubat v. Thieret*, 867 F.2d 351, 358 (7th Cir.), *cert. denied*, 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989)).

5. The government represents that defense counsel received copies of these photographs.

We have carefully reviewed the photographs and are convinced that the lineup was not unduly suggestive. Each of the six participants in the lineup was white. All participants were approximately the same height with similar physical builds. All of the participants wore the same prison jumpsuit. Each of the participants wore the same disguises. Most importantly, no handcuff marks were noticeable on any of the participants. Based on these photographs, we are satisfied that the physical characteristics of the participants did not suggest whom the witnesses should identify. Accordingly, we deny Erickson's motion to suppress lineup identifications without a hearing.[6]

### H. *Motion to Quash Arrest and Suppress Evidence*

On December 16, 1991, Erickson was arrested by the FBI as he attempted to start a stolen maroon Mazda which had been under surveillance by FBI agents since December 13, 1991. Erickson filed a motion to quash his arrest and suppress evidence seized incident to his arrest. The motion is directed to the suppression of a handgun and other miscellaneous property seized during the search of the car.[7] Erickson argues that the FBI agents illegally arrested him and seized the articles in the car without probable cause in violation of the Fourth Amendment. Because we find that the warrantless arrest was justified by exigent circumstances, Erickson's arrest was lawful. Moreover, the search of the car was appropriate as it was incident to a lawful arrest.

The court will set forth a brief overview of the facts as gleaned from the indictment and the government's response.[8] In approximately 1990, Special Agent David Childre ("Childre") and other law enforcement agents were assigned to investigate the armed robberies of several federally insured financial institutions. All of the robberies were committed in essentially the same fashion. Most of the robberies[9] were committed by a single white male who wore gloves and used sunglasses and a dark false beard to disguise himself. Witnesses generally described him as approximately six feet three inches tall and his weight as approximately 220 pounds. He always carried a police scanner and a handgun. In every robbery this individual entered the bank aggressively, brandished firearms and verbally threatened the various bank employees. His conduct was not simply limited to armed bank robbery.

Before each robbery defendant engaged in a unique pattern of car theft involving only foreign made cars. First, a small hole was usually drilled into the passenger side door to gain entry. Thereafter, defendant would remove the key cylinder for the ignition system so that the car could be started without a key, and in most instances, by a screwdriver. In order to avoid detection the residual hole would be covered by a shirt or baseball cap to avoid being noticed by passers-by on the street. It was this practice of car theft which ultimately led to Erickson's arrest.

---

6. No evidentiary hearing is necessary to resolve this motion notwithstanding Shishem's affidavit. The photographs of the lineup attached to the government's response clearly reveal no handcuff marks. After our review of the photographs, we are convinced that no factual basis supports Shishem's statement in her affidavit.

7. In its response the government states that the following items were recovered from the nylon shoulder bag: two guns (a nine millimeter pistol and a revolver with the serial number obliterated); ammunition for both guns; a fake beard; two fake moustaches; and spirit gum. Recovered from the car was a sixteen-channel portable police scanner and a gun cartridge (.223 caliber). (Government's Response, p. 16.)

8. Erickson did not file a reply challenging the government's version of the facts as set forth in its response.

9. The following institutions were robbed: (1) First Nationwide Bank, Wilmette, Illinois on January 9, 1990; (2) Savings of America Bank, Chicago, Illinois on March 5, 1990; (3) Talman Home Federal Savings and Loan, Libertyville, Illinois on May 17, 1990; (4) National Bank of Detroit–Skokie, Skokie, Illinois on June 8, 1990; (5) Fairfield Savings and Loan Association, Norridge, Illinois on September 20, 1990; (6) First Colonial Bank Northwest, Wheeling, Illinois on November 15, 1990; (7) First Midwest Bank, N.A., Mundelein, Illinois on February 4, 1991; and (8) First Chicago Bank, Elk Grove Village, Illinois on November 18, 1991.

On December 9, 1991, two cars were stolen which were to be used in a planned bank robbery. The first car, a 1986 gold Mazda, was stolen from the Golf Mill Shopping Center, Niles, Illinois. On December 10, 1991, the police discovered the gold Mazda at a different location in Niles. The ignition had been pulled and was covered with a towel. A screwdriver was next to the driver's seat. As the pattern of this theft matched the pattern of the thefts of cars used in the prior bank robberies, the gold Mazda was kept under constant police surveillance.

The second car, a 1984 maroon Mazda, was stolen from the Randhurst Mall, Mount Prospect, Illinois. Several days later, on December 13, 1991, police located the maroon Mazda in the area of the Williamsburg Apartments, Rolling Meadows, Illinois. Once again, the ignition had been pulled and it was covered with a piece of paper. As was the case with the gold Mazda, a screwdriver was on the passenger's seat. After the maroon Mazda was found, it was also kept under constant surveillance.

Thereafter, on December 15, 1991, a white male matching the physical description of the bearded bank robber entered the gold Mazda and drove it to a Jewel grocery store parking lot located adjacent to the Capital Bank of Westmont, Westmont, Illinois. Interestingly, the movement of the gold Mazda was paralleled by a silver van which was registered to Erickson. Approximately two hours after defendant left the gold Mazda near the Capitol Bank of Westmont, the silver van registered to him dropped off a white male in the vicinity of the maroon Mazda. This individual entered the maroon Mazda and proceeded to an apartment complex located at the intersection of Irving Park Road and Mercury, Schaumburg, Illinois. The silver van proceeded to 658 Waterford, Hanover Park, Illinois, the Erickson's residence.

The next day, December 16, 1991, two individuals were observed leaving the Erickson residence and entering the silver van registered to Erickson. The van then drove to the shopping center parking lot located at Irving Park and Weiss Road, Schaumburg, Illinois, in the vicinity of the maroon Mazda. An individual later identified as Erickson got out of the silver van and walked to the maroon Mazda. Erickson entered the maroon Mazda. Erickson was observed placing a screwdriver in the vicinity of the ignition column and starting the car. Erickson was immediately arrested after he attempted to start the maroon Mazda.

As Erickson was being instructed to put his hands on the steering wheel, he was observed placing his right hand into a nylon shoulder bag, located on the passenger's front seat. From the outside of the maroon Mazda, a handgun was observed inside the nylon bag. Erickson was arrested and read his *Miranda* rights. Thereafter, during his ride to the Dirksen Federal Building for processing, Erickson admitted that he had been attempting to reach for the handgun that he had in the nylon bag at the time of his arrest.

In our view, these facts clearly demonstrate that exigent circumstances existed at the time of Erickson's arrest. The officers could have reasonably believed that their safety and the public safety would have been threatened if Erickson were not arrested. *See United States v. Madewell*, 917 F.2d 301, 304–05 (7th Cir.1990); *United States v. Ware*, 914 F.2d 997, 1000 (7th Cir.1990) ("Exigent circumstances exist when there is a reasonable belief by police that their safety or the safety of others may be threatened.") At the time the FBI agents apprehended Erickson they had reason to believe he was the individual who committed a series of *armed* robberies. Moreover, the FBI agents were aware that an accomplice of Erickson's was nearby in the silver van.

Equally important, as Erickson was in a car, he was likely to flee the scene or take action which would have made his apprehension difficult. In addition, there was a likelihood that Erickson would dispose of or destroy evidence of his crimes if he were not arrested. In our opinion, this situation provides for even further exigent circumstances, which coupled with probable

cause, excuses the absence of an arrest warrant. Erickson's motion to quash his arrest is denied.

 In this same vein, Erickson submits that the evidence recovered from the maroon Mazda must be suppressed because there was no probable cause to arrest him. The short answer to Erickson's argument is that he lacks standing to challenge the search of the maroon Mazda. In his motion, Erickson does not contend that he had permission to use the automobile or that he owned the automobile. In fact, such an argument would have been sheer folly as the maroon Mazda had been stolen one week prior to Erickson's arrest. Thus, Erickson cannot legally object to the search because he had no legitimate expectation of privacy at the time of the search. *See United States v. Hargrove*, 647 F.2d 411, 413 (4th Cir.1981); [10] *cf. United States v. Kiser*, 948 F.2d 418, 423–24 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992). In sum, Erickson's motion to suppress evidence seized from the automobile is denied.[11]

Finally, an evidentiary hearing is not necessary to resolve this motion. "A district court is not required to conduct an evidentiary hearing on every motion to suppress. Rather, the court must conduct such a hearing 'only if evidence on an issue of fact is necessary to the decision of the motion.'" *United States v. Rollins*, 862 F.2d 1282, 1291 (7th Cir.1988), *cert. denied,* 490 U.S. 1074, 109 S.Ct. 2084, 104 L.Ed.2d 648 (1989) (quoting *Nechy v. United States*, 665 F.2d 775, 776 (7th Cir.1981)). "[T]o justify a hearing, the facts presented in the motion must be definite, specific, detailed and non-conjectural." *United States v. Rollins*, 862 F.2d at 1291 (quoting *United States v.*

*Hamm*, 786 F.2d 804, 807 (7th Cir.1986)). In his motion Erickson has not raised an issue of fact which would require a hearing. Erickson's motion to quash arrest and suppress evidence is denied.

### I. Motion to Quash Search Warrant and Suppress Evidence

On December 16, 1991, after Erickson's arrest, Magistrate Judge Pallmeyer issued a warrant to search Erickson's residence at 658 Waterford Drive, Hanover Park, Illinois. Specifically, the warrant provided that the agents could search for the following items: United States currency; money straps and wrappers; a black semi-automatic pistol, a .223 caliber weapon, and other guns; a dark colored beard and wig; black sunglasses; a portable police scanner; Chicago Cubs baseball cap; red nylon gym bag; ammunition; and auto theft tools.

In this motion, Erickson seeks to quash the warrant to search his residence and to suppress all evidence and leads seized as a consequence of the search. Erickson challenges the search warrant on various grounds. First, Erickson contends that there was no factual basis for the Magistrate Judge's finding of probable cause to support the warrant. Second, he asserts that the FBI agents could not have relied on the search warrant in good faith. Finally, Erickson argues that the search of his residence exceeded the scope of the warrant. Because Erickson's arguments are wholly without support, we reject each of them and deny his motion to quash the search warrant and suppress evidence. We also deny his request for a hearing. We briefly address each argument in turn.

 As his first line of attack, Erickson submits that the affidavit of Childre, a

---

**10.** Our independent research of this issue uncovered *United States v. Garcia*, 897 F.2d 1413 (7th Cir.1990). We have considered *Garcia* and find it factually inapposite. In *Garcia*, the defendant challenged the status of the vehicle. Here, by contrast, Erickson does not claim that he rightfully possessed the maroon Mazda.

**11.** Even if we were to assume that Erickson had standing to challenge the search of the stolen automobile, we are persuaded by the government's citation to Seventh Circuit authority re-

jecting Erickson's argument. *See, e.g., United States v. Arango*, 879 F.2d 1501, 1505–06 (7th Cir.1989), *cert. denied,* 493 U.S. 1069, 110 S.Ct. 1111, 107 L.Ed.2d 1019 (1990); *United States v. Karlin*, 852 F.2d 968, 970–72 (7th Cir.1988), *cert. denied,* 489 U.S. 1021, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989). We believe that in light of the circumstances faced by the FBI agents, it was proper and prudent to search the automobile incident to Erickson's arrest to ensure the safety of officers and all individuals in the area.

Special Agent of the FBI, does not set forth evidentiary facts from which a magistrate could conclude that there was a "substantial basis" that probable cause existed to issue a search warrant for Erickson's residence. Specifically, Erickson maintains that the relationship between the crimes alleged in the affidavit and the conclusion that Erickson committed the crimes is too tenuous and speculative. Finally, Erickson argues that there are no allegations by Childre that disguises or evidence of the crimes could be found in his residence.

Erickson's challenge to the Magistrate Judge's finding of probable cause merits no extended discussion. According to Childre's affidavit, as Erickson was being instructed to put his hands on the steering wheel, he was observed placing his right hand into a nylon duffle bag. In plain view from the exterior of the maroon Mazda, a handgun was observed inside the duffle bag. Erickson was arrested and read his *Miranda* rights. (Childre Aff., par. 18.) Erickson admitted to the FBI agents that he had been reaching for the handgun at the time of his arrest. (Childre Aff., par. 19.) The affidavit further states that Erickson admitted he had weapons and black gun powder in his residence. (Childre Aff., par. 19.) In addition, the affidavit recites that as Erickson was being arrested, his accomplice in the silver van engaged in a high-speed chase and shoot-out with FBI agents. (Childre Aff., par. 22.) Based on these salient facts, Magistrate Judge Pallmeyer issued a search warrant for Erickson's home.

Contrary to Erickson's assertion, Magistrate Judge Pallmeyer's finding of probable cause was based on facts in the Childre affidavit which were neither speculative nor circumstantial. Paragraph 2 of Childre's affidavit unequivocally states that "[t]he information contained in this affidavit is based on affiant's investigative efforts as well as affiant's knowledge of the activities of the other agents and law enforcement officers who have participated in the investigation." (Childre Aff., par. 2.)[12]

In addition, Childre states that as of January 9, 1991, he had routinely followed stolen car reports filed with the Illinois State Police for the northwest suburbs of Chicago. (Childre Aff., par. 23.) After carefully reviewing Childre's affidavit, and in particular statements made by Erickson to FBI agents at the time of his arrest regarding the guns in his home, we determine that there was probable cause to support Magistrate Judge Pallmeyer's issuance of the search warrant. *See, e.g., United States v. Spears*, 965 F.2d at 277, 1992 WL 115598 at *14, *United States v. Singer*, 943 F.2d 758, 762 (7th Cir.1991).

Consistent with this determination, we summarily reject Erickson's second argument that the federal agents' reliance on the search warrant was not "objectively reasonable." Clearly, these federal agents acted in objective good faith in searching Erickson's home. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). They relied on a facially valid search warrant issued by a neutral and detached magistrate. We cannot conceive of any reason, based on the record before us, which would have led the agents to believe the search warrant was not properly issued. As a result, we reject Erickson's attack on this ground as well.

Finally, Erickson argues that most of the items seized and identified on the inventory list (attached as an exhibit to his motion) are beyond the scope of the search warrant and must be suppressed. Erickson asserts, without any legal analysis or discussion, that most of the items listed on the inventory sheets are not expressly set forth in the search warrant. By way of illustration, Erickson states that the following items were recovered which were not listed on the warrant: drill bits, books, file die set, channel locks, driving gloves, numerous sunglasses, message tape, screwdrivers, magazines, smoke grenades and fake beard. (Memo. in Support, p. 8.) According to Erickson's logic, because the seizure of these items were beyond the authority

---

**12.** "In determining whether probable cause exists, a magistrate is entitled to regard an affiant's fellow law enforcement officers as reliable sources." *United States v. Spears*, 965 F.2d 262, 277 (7th Cir.1992).

granted in the search warrant they must be suppressed as seized without probable cause. We do not agree.

As an initial matter, Erickson's motion is vague and conclusory. He does not identify with any specificity what items he wants suppressed. Equally deficient, even though he attached the inventory list he does not state which areas he believes were unlawfully searched and why. It is not this court's obligation to advance legal arguments for counsel. However, out of an overabundance of caution, we briefly set forth our reasoning.

First, to the extent Erickson suggests that the seizure of drill bits, numerous weapons, a bag with tools, sunglasses, a rifle muzzle brake and a fake beard exceed the scope of the warrant he is wrong. The express terms of the warrant authorized the agents to search for other guns, a dark colored beard, black sunglasses and auto theft tools. The recovery of these items, identified on the face of the search warrant, does not violate Erickson's Fourth Amendment rights.

■ Second, the agents seizure of certain items not expressly set forth in the search warrant does not violate Erickson's constitutional rights. In searching Erickson's home for easily concealed items, we agree that it was proper for them to search any area of the home in which the specified property could have been located and to seize any property constituting evidence of criminal activity. *See United States v. Cardona–Rivera*, 904 F.2d 1149, 1155 (7th Cir.1990); *United States v. Eschweiler*, 745 F.2d 435, 439 (7th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1188, 84 L.Ed.2d 334 (1985). We find that the federal agents did not exceed the bounds of the warrant by seizing contraband they uncovered in the course of a lawful search. For all these reasons, Erickson's motion to quash search warrant and suppress evidence is denied.

## II. GOVERNMENT'S MOTION

In addition to its motion for admission of evidence regarding the shooting of the Palatine police officer, the government filed a motion for reciprocal discovery pursuant to Rule 16(b)(1)(A) of the Federal Rules of Criminal Procedure. In this motion, the government seeks an order compelling defendant to make available for inspection all documents and any reports of examinations and tests which defendant intends to introduce at trial in his case-in-chief. As defendant filed no objections to this request, the government's motion for reciprocal discovery is granted. Defense counsel shall make these documents available for inspection by the government on or before June 29, 1992.

## III. CONCLUSION

Erickson's motion to serve subpoenas *duces tecum* is granted. Erickson's motion for production of favorable evidence is granted in part and denied in part as moot. The government shall provide Erickson with *Brady* and *Giglio* materials on or before June 29, 1992. Erickson's motion *in limine* to exclude coconspirator statements is denied as moot. Erickson's motion to produce electronic and mechanical surveillance is granted to the extent that if any documents exist authorizing such surveillance the government is ordered to produce them on or before June 29, 1992. Erickson's motion to disclose "other acts" evidence is denied in part as moot and in part because Erickson is not entitled to the information requested. Erickson's motion to sever counts is denied. Erickson's motion to suppress lineup identifications is denied. Erickson's motion to quash arrest and suppress evidence is denied. Erickson's motion to quash search warrant and to suppress evidence is denied. In addition, the government's motion for admission of evidence regarding the shooting of the Palatine police officer pursuant to Federal Rule of Evidence 404(b) or under the inextricably intertwined standard is denied. Finally, the government's motion for reciprocal discovery is granted. Defense counsel shall make the requested documents available for inspection by the government on or before June 29, 1992.