USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1632

 UNITED STATES OF AMERICA,

 Respondent,

 v.

 MARK VIGNEAU,

 Petitioner.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Ronald R. Lagueux, U.S. District Judge]

 Before

 Boudin, Circuit Judge,
 
 Campbell, Senior Circuit Judge,
 
 and Lipez, Circuit Judge.
 
 
 
 
 Arthur R. Silen, by appointment of the court, for petitioner.
 Donald C. Lockhart, Assistant United States Attorney, with
whom Margaret C. Curran, United States Attorney, was on
consolidated brief for the United States.

July 22, 1999

 
 

 BOUDIN, Circuit Judge. This decision addresses the
appeal of Mark Vigneau, who was convicted of drug and money
laundering offenses. It is a companion to our decision released
today on Patrick Vigneau's appeal, No. 98-1664, and we assume
familiarity with that opinion, which contains a more extensive
description of the criminal schemes charged by the government. The
background and proceedings pertaining to Mark Vigneau are as
follows. 
 On May 8, 1997, Mark Vigneau was charged in an indictment
with conspiracy to distribute marijuana, 15 counts of money
laundering, conspiracy to commit money laundering, and forfeiture
allegations. 21 U.S.C. 846, 841, 853; 18 U.S.C. 1956, 982. 
At trial, substantial testimony--most importantly from two former
co-conspirators (Randy Panahi and Timothy Owens)--established the
existence of drug distribution and money laundering schemes led by
Patrick Vigneau and Richard Crandall. The evidence directly
implicating Mark Vigneau in the schemes was considerably narrower.
 This direct evidence included a videotape of a December
1995 conversation between Patrick Vigneau and a co-conspirator
turned cooperating witness--Richard Crandall--in which Patrick said
or implied that Mark was part of the conspiracy; an entry
juxtaposing "Mark V" with a $1,350 credit or payment listed in the
pocket organizer/drug ledger seized in the September 1995 search of
Patrick's white van; testimony by Panahi that Patrick introduced
Mark to him after Panahi drove a drug-laden U-Haul truck to Rhode
Island in October 1995 and that Mark "stripped" the truck of its
accessories afterwards; testimony by Owens that Mark was one of the
senders of the drug sale proceeds; 15 Western Union money transfer
records listing Mark as the sender; and telephone records showing
many phone calls between Mark and other alleged conspirators during
the period of the conspiracy.
 Following a lengthy trial with Patrick and two other co-
defendants, the jury convicted Mark Vigneau on March 2, 1998, of
conspiracy to distribute marijuana, conspiracy to commit money
laundering, and four counts of money laundering on specific days. 
He was acquitted of the remaining eleven counts of money laundering
on specific days, and the government dismissed the forfeiture
counts. On May 22, 1998, Mark Vigneau was sentenced to 97 months
in prison. On appeal, he assigns as error the admission against
him of the following evidence: the Western Union records, the
telephone call records, the drug ledger, and the videotape.
 The government's strongest evidence against Mark Vigneau
included 15 Western Union business records showing that money was
wired on specific dates to recipients in the Southwest by a sender
who gave Mark Vigneau's name, address and telephone number on the
"To Send Money" forms. For five of the transfers, the government
had the original forms submitted by the sender; for the other ten,
it had only the computer record of the information on the forms, as
described in our companion opinion. The jury convictions on the
money laundering counts corresponded to four of the five original
forms (the hand-writing on the fifth form may have varied from the
other four). 
 For reasons explained in the companion opinion, we agree
with Mark Vigneau that his name, address and telephone number
appearing in the "sender" section of the Western Union money
transfer forms were inadmissible hearsay. The business records
exception to the hearsay rule, Fed. R. Evid. 803(6), does not
itself allow the admission for their truth of "outsider" statements
contained within business records. Cameron v. Otto Bock Orthopedic
Indus., Inc., 43 F.3d 14, 16-17 (1st Cir. 1994); Johnson v. Lutz,
170 N.E. 517 (N.Y. 1930). Nor did the government offer other
direct or circumstantial evidence, such as a handwriting expert, to
show that it was in fact Mark who had completed the forms.
 There is no plausible claim of harmless error here as to
the four money laundering counts for which Mark was convicted. 
United States v. Shea, 159 F.3d 37, 40 (1st Cir. 1998), cert.
denied, 119 S. Ct. 1480 (1999). The only direct evidence linking
Mark to these money transfers was his name and related information
in the sender's portion of the Western Union "To Send Money" forms. 
Similarly, we cannot say that the improperly admitted evidence was
harmless as to Mark's conviction for conspiracy to launder money. 
Although other testimony weakly linked Mark to the process of
laundering money, these Western Union forms (if taken for their
truth), were by far the most potent evidence of Mark's connection
to the money laundering scheme.
 Easily the most difficult issue in this appeal is whether
the admission of the Western Union records also infected Mark
Vigneau's conviction for drug conspiracy. While the evidence
without the Western Union records was adequate to support this
conspiracy conviction, its strength was nothing like that
introduced against his brother, which included detailed direct
testimony by Owens and Panahi about Patrick Vigneau's participation
in the drug scheme. The government did not have Mark Vigneau on
videotape incriminating himself, nor did it find the drug ledger in
Mark Vigneau's van. This comparison of the two brothers'
situations frames, but does not resolve, the harmless error
question.
 The ordinary test for harmless error is sometimes said to
turn on whether it is "highly probable" that the improperly
admitted evidence "contributed" to the conviction, Shea, 159 F.3d
at 40 (quoting U.S. v. Rowe, 104 F.3d 1408, 1414 (1st Cir. 1997),
cert. denied, 117 S. Ct. 2424 (1997). But since any relevant
evidence wrongly admitted probably was considered by the jury (and
therefore "contributed" in a literal sense), a more useful
formulation of the harmless error question is to ask whether the
result would have been the same if the disputed evidence had not
been admitted. We have therefore said that a conviction will be
upheld if it is "highly probable" that the result would have been
the same. United States v. Cudlitz, 72 F.3d 992, 999-1000 (1st
Cir. 1996).
 Another complication is decisions holding that, at least
for certain errors that are constitutional in character, the error
must be harmless "beyond a reasonable doubt." E.g., United States
v. Trenkler, 61 F.3d 45, 60 n.22 (1st Cir. 1995). In some cases,
but not in all, the wrongful admission of hearsay can also violate
the Confrontation Clause of the Constitution, and where the line is
to be drawn is unclear. Of course, Mark Vigneau did not object to
the Western Union forms on constitutional grounds and might be
viewed as having lost this claim.
 In all events, we have concluded that the error cannot be
deemed harmless even if tested by the Shea standard ("highly
probable") ordinarily applicable to trial errors and more favorable
to the government. The evidence overwhelmingly showed the
existence of a drug distribution scheme involving Patrick Vigneau
and Crandall, but the resolution in this instance turns on the
strength of evidence linking Mark Vigneau to the scheme. Here,
there are a number of strands but--apart from the Western Union
records--each strand was subject to arguments that might or might
not have raised a reasonable doubt in the mind of a juror. 
 Patrick Vigneau's statements about Mark on the videotape 
were admissible against Mark as made in furtherance of an ongoing 
conspiracy (even though they were made to Crandall who was no
longer a part of the conspiracy, United States v. Crocker, 788 F.2d
802, 805 (1st Cir. 1986)), based on the Petrozziello finding of the
district judge that the conspiracy was ongoing as to Mark and
Patrick. United States v. Petrozziello, 548 F.2d 20, 28 (1977). 
But Patrick's videotaped references to Mark, while certainly
tending to incriminate Mark, were brief and hardly the equivalent
of the testimony of a witness who took the stand to implicate Mark
based on specific dealings with him.
 The terse reference to Mark Vigneau in Patrick Vigneau's
drug ledger ("Mark V" and "1,350") is subject to the same attack
and is even more ambiguous. True, Owens did testify that Mark
Vigneau appeared on one occasion after a drug delivery had been
made to Patrick and began "stripping" the U-Haul of its
accessories; but the accessories in question were identified as
"flares" and the like, and Owens did not say that Mark was in any
way specifically connected with the drug transfer. Crandall's
reference to Mark as a "sender" of Western Union money transfers is
very weak. See note 1 above. The toll calls between Mark and
various conspirators are obviously suspicious but by themselves are
not conclusive, there being no indication of what was actually
said.
 Taken singly, these strands of evidence have some
strength; and wrapped together, they are enough to prove Mark's
link to an otherwise amply proved drug conspiracy and to permit a
conviction. But we cannot say that it is "highly probable" that
the jury would have convicted Mark absent the damning proof of the
Western Union forms which--if taken for the truth of their
statements that Mark Vigneau was the sender--showed his direct
involvement in the transfer of drug proceeds back to the suppliers. 
The issue is very close, but for a preserved objection, doubts are
properly resolved in favor of a defendant. Cf. United States v.
Lamberty, 778 F.2d 59, 62 (1st Cir. 1985).
 This outcome may seem discordant: the jury might well
have convicted Mark Vigneau without the Western Union evidence, and 
in most cases the sender's name on a Western Union form is probably
reliable (albeit inadmissible) evidence as to the identity of the
sender. But the defendant is entitled to the benefit of the
hearsay rule even if it owes as much to history as to logic, and
as it happens, evidence in this case showed that sometimes the
names that the conspirators entered on Western Union forms were
names of innocent real persons (including the Vigneaus' mother) as
well as fabricated names. In all events, nothing bars a retrial of
Mark Vigneau.
 Although Mark Vigneau's remaining claims of evidentiary
error would not alter the need for a remand, several could arise in
the event of a retrial, so we address them now. Using telephone
records, the government offered evidence that calls had been made
between Mark Vigneau's residence and that of Owens and other
members of the conspiracy. These facts were established by
undisputed telephone records coupled with stipulations. Still,
Mark Vigneau objects that this evidence was improper, absent proof
that he personally made or received the particular calls placed
from or to his apartment.
 The objection fails, because the location at which the
calls were made or received was circumstantial evidence implicating
Mark Vigneau. Certainly someone else at the location might have
made or received the calls, but evidence is relevant so long as it
has a tendency to make a fact more (or less) likely than it would
be absent the evidence. Fed. R. Evid. 401. Reliance on inferences
drawn from the fact of a location does not present a hearsay
problem. Business records used to prove that the telephone was in
Mark's apartment might or might not have presented such a problem,
but stipulation settled the issue.
 By the same generous test of relevance, the drug ledger,
with its brief reference to Mark Vigneau, was not excludable on the
ground that the references are cryptic and do not themselves
establish Mark Vigneau's guilt beyond a reasonable doubt. The
weight of the evidence was for the jury, and it is not a condition
of admitting a specific item of evidence that it be sufficient to
prove the case standing by itself. With regard to attacks on the
search that produced the ledger, the issue was not raised below,
there is no indication that Mark Vigneau would have standing to
contest the search, U.S. v. Aguirre, 839 F.2d 854, 856-57 (1st Cir.
1988), and the search was in any event valid for reasons explained
in our companion opinion. 
 Mark Vigneau also objects to the admission against him of
the videotape of the meeting between Patrick Vigneau and Crandall
on the ground that it deprived Mark Vigneau of his "right to
confront" the witnesses against him. In this case, the out-of-
court statements that directly incriminated Mark were made by
Patrick, which were admissible against Mark under the co-
conspirator exception to the hearsay rule, Fed. R. Evid.
801(d)(2)(E), given the district court's Petrozziello findings. 
Admission of evidence pursuant to a well-established hearsay
exception does not violate the Sixth Amendment. Bourjaily v.
United States, 483 U.S. 171, 183 (1987).
 Mark Vigneau appears to attack the Petrozziello findings
themselves. Yet the district judge had only to find it more
probable than not that Patrick Vigneau's statements were made in
furtherance of a conspiracy that involved Mark Vigneau at the time
it was made. United States v. Ortiz, 966 F.2d 707, 715 (1st Cir.
1992), cert. denied, 506 U.S. 1063 (1993). The district judge
described in detail the basis for this finding. Nothing in Mark
Vigneau's discussion of this evidence, which is not itself
detailed, shows the district court's decision to be clearly
erroneous. United States v. Patterson, 644 F.2d 890, 894 (1st Cir.
1984).
 Mark Vigneau has submitted a pro se brief raising further
arguments in addition to those raised by his appellate counsel. In
it, he adopts objections made by Patrick Vigneau to the trial
continuances and the testimony of the agent who allegedly bolstered
the testimony of Owens and Panahi. We have already disposed of
those objections in our companion opinion, finding them without
merit; and, of course, there is little likelihood that either
problem will recur in the event of a retrial.
 Mark Vigneau also attacks, as improper, remarks of the
prosecutor in the opening and closing statements. However, there
was no objection to these statements at the time, making them
unlikely candidates for reversal. Olano, 507 U.S. at 732-35
(multiple requirements for "plain error"). We need not discuss the
statements individually, since there is no reason to think that the
same remarks will be made on retrial (if there is one). If the
remarks are made again, presumably counsel will object, and the
district court can rule on them in context and tell the jury what
to do.
 For the reasons stated, the judgment of conviction and
the sentence imposed on Mark Vigneau are both vacated and the
matter is remanded for a new trial if the government wishes to
pursue one.
 It is so ordered.